# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **LEMOYNE-OWEN COLLEGE** ) | |
| **FACULTY ORGANIZATION,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| ) | **Case No.: 2:19-cv-02424-SHL-jay** |
| **v.** ) | |
| ) | |
| **LEMOYNE-OWEN COLLEGE** ) | |
| **and BOARD OF TRUSTEES** ) | |
| **Defendant.** ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**COMES NOW,** the Plaintiff, LeMoyne-Owen College Faculty Organization, by and through its counsel of record, and files its Response in Opposition to Defendants' Motion to Dismiss ("Response"). In support of its position that Defendants' Motion to Dismiss ("Motion") should be denied in its entirety, Plaintiff states as follows:

### I.    BRIEF SUMMARY

Defendants LeMoyne-Owen College and its Board of Trustees have filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim. While Defendants' Motion contorts an alternative request for relief as its initial rationale for dismissing the complaint with prejudice, Plaintiff's Response will address the causes of action in order. As for Plaintiff's breach of contract claim, Defendants argue that the Faculty Handbook ("Handbook"), even read in conjunction with executed "Faculty Commitment Agreements," cannot, as a matter of law,

establish a contractual agreement between the parties. Defendants' rely on cases which do not support the proposition that, at the pleadings stage, an employer can dispute factual allegations in its favor to determine that there was no contract. Plaintiff asserts that, in this case, the proof developed through discovery will establish a contractual relationship between the parties.

Similarly, Defendants' Motion draws inferences in its favor to determine at the pleadings stage that there was in fact no breach of the contract at issue. Defendants' mischaracterization of the *examples* of the breach would be appropriate in a closing argument, but is wholly at odds with the standard of review at this stage. In short, Defendants assert that, if there is a contract in this case, eliminating letters of appointment for faculty members and faculty review of accreditation submissions do not amount to breaches of that contract. Defendants' Motion goes as far as to complain that Plaintiff's Complaint does not provide a pin-cite for the source of the breach regarding faculty involvement in accreditation, but quotes a relevant provision from the Handbook that grants that oversight to members of the Faculty. Whether the changes to the nature and structure of the faculty/administration relationship and the nature of faculty involvement in accreditation are breaches of contract are matters of fact. Defendants' *opinions* about those examples are irrelevant under the standard of review at the pleading stage.

Defendants also argue that the Plaintiff lacks standing to claim a breach of fiduciary duty, as the only fiduciary duty of the Defendant Board of Trustees is owed to Defendant LeMoyne-Owen College. Plaintiff asserts that it does have constitutional standing and that adopting the Defendants' interpretation of fiduciary duty in circumstances like those at issue would result in situations wherein there could be no check on the Board of Trustees, other than the administration that it is responsible for selecting and retaining. Further, Students and alumni are

not in positions to know whether the Board of Trustees is faithfully executing its duties, until after serious or irreparable harm has been done.

Finally, Defendants point to the parties' prior litigation before the NLRB as grounds for dismissal, arguing that this Court lacks subject matter jurisdiction. Defendants' Motion repeatedly references Plaintiff's alleged request for "an order from the Court that Defendants recognize Plaintiff as a collective-bargaining unit." ECF No. 8-1, Introduction. Defendants' Motion then proceeds to outline the precedential support for its position that the NLRB has exclusive jurisdiction over such representational issues. The problem with this argument is that it carefully excised the Plaintiff's true request and placed a spotlight on an *alternative* request for relief.

Plaintiff seeks an order from this Court that is *consistent* with the findings and ruling of the NLRB. Defendants seem to acknowledge the expertise of the NLRB, but Plaintiff's Complaint is premised on the fact that those findings (*e.g.* the system of co-governance makes the faculty managerial) have been ignored by Defendants. Plaintiff asserts that it is not seeking a review of the NLRB's earlier decision; instead, Plaintiff is asking this Court to find that these Defendants are estopped from violating the letter and spirit of that decision. Collateral estoppel, however, does not require that the prior court address subsequent matters, only that the subsequent court recognize that those matters were previously litigated by the parties.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss at the pleadings stage, a court "must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531,

3

538 (6th Cir. 2012) (quoting *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, plaintiffs are required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, "the issue is not whether a [party] will ultimately prevail but whether the [party] is entitled to offer evidence to support the claims." *Terrell v. Uniscribe Professional Services, Inc.*, 348 F. Supp.2d 890, 892 (N.D. Ohio 2004) (quoting *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). A "motion to dismiss will be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 892-93 (quoting *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)) (internal quotation marks omitted).

### III.  LAW & ARGUMENT

*BREACH OF CONTRACT*

Defendants, in their Motion, argue that the Faculty Handbook, even read in conjunction with the executed Faculty Commitment Agreement, does not as a matter of law constitute a contract. The existence of a contract, however, is generally a matter of fact. *Id.* at 893-94. "While it is the courts' duty to interpret the terms of a contract as a matter of law, the existence of a contract itself is generally a matter left for the trier of fact." *Id.* (citing *Oglebay Norton Co. v. Armco. Inc.*, 52 Ohio St.3d 232, 235, 556 N.E.2d 515 (1990); *Gruenspan v. Seitz*, 124 Ohio App.3d 197, 211, 705 N.E.2d 1255 (1997); *Finsterwald–Maiden v. AAA South Central Ohio*, 115 Ohio App.3d 442, 447, 685 N.E.2d 786 (1996) (citing *Normandy Place Assoc. v. Beyer*, 2 Ohio St.3d 102, 106, 443 N.E.2d 161 (1982)) (concluding that whether the parties "intended to create a binding contract is a question of fact properly resolved by the trier of fact"); *Garrison v.

*Daytonian Hotel*, 105 Ohio App.3d 322, 325, 663 N.E.2d 1316 (1995); *Ankle & Foot Care Centers v. InfoCure Sys., Inc.*, 164 F.Supp.2d 953, 958 (N.D. Ohio 2001) (explaining that "[w]hether or not a contract exists is a question of fact.").

In this case, unlike those cited by Defendants, there has been no discovery regarding formation issues. Plaintiff asserts that the Faculty Handbook, especially in conjunction with the Faculty Commitment Agreement, sets forth the terms which were binding upon *both* parties. Further, discovery in this matter would allow Plaintiff the opportunity to present proof of the parties' intentions to be bound by those agreements outlined in the Handbook.

Similarly, evidence of multiple breaches of this contract could be proven to the trier-of-fact, given this case is allowed to proceed to the discovery stage. Defendants' Motion recites language from the June 29, 2016 letter to Mr. Robinson, but, in broad conclusory strokes, ignores that the letter eliminates Letters of Appointment, to conclude that the letter essentially changed nothing. Whether that letter is an example of a breach is a matter of fact, despite Defendants' attempt to subtract meaning from the words quoted therein.

Defendants' Motion artfully and consistently takes the same approach with regard to the accreditation issue. Defendants simultaneously assert that Plaintiff's Complaint fails to provide the pin-cite necessary to find where in the Faculty Handbook accreditation responsibilities are explained, while, within the next sentence, quoting a provision of the Handbook that vests responsibility for "insuring…that requirements for accreditation, planning and reporting are met by the division," with Academic Division Chairs, like those represented by the Plaintiff. ECF No. 8-1, p.12.  From there, the Defendants proceed to ignore the factual allegation that the changes to the processes related to accreditation were material and amount to a breach, and, in

viewing the matter in a light most favorable to the *movant* deems that no trier-of-fact could find Defendants' conduct to constitute a breach. That is simply not the appropriate standard. Whether the Defendant LeMoyne-Owen College breached its contract with Plaintiff is a matter of fact.

*BREACH OF FIDUCIARY DUTY*

Defendants, through their Motion, point to a lack of cases on point to support the proposition that there can be no fiduciary duty between a college's board of trustees and that college's faculty organization. In a case like that at bar, this position ignores an important fact— the College itself, to whom Defendants acknowledge a fiduciary duty is owed, is represented by an administration selected, hired and retained by the Defendant Board of Trustees. That creates an inherent conflict of interest that dramatically reduces the likelihood that the College's administration would be a sufficient check on the Board's fiduciary obligations. Alumni and students are not sufficiently involved with the inner-workings of any school to serve as a check, until or unless a school has lost its accreditation, for instance. Therefore, Plaintiffs are uniquely situated to see, appreciate, and address breaches of the Board's fiduciary duty, prior to the occurrence of irreparable harm.

In addition to such policy considerations, a review of the elements courts generally use to determine the existence of a fiduciary duty supports the finding of such a relationship in this case:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of age, state of health, illiteracy, mental disability, or ignorance; (2) things of value such as land, monies, a business, or other things of value which are the property of the subservient person must be possessed or managed by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic or habitual manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant

party.

*Shapiro v. Butterfield*, 921 S.W.2d 649, 651-52 (Mo. Ct. App. 1996) (quoting *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 526-27 (Mo. 1988) (en banc)). Furthermore, specifically in the private college or university setting, "an officer must discharge his or her duties in good faith and with the care that an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner that the officer believes to be in the best interests of the corporation." REVISED MODEL NONPROFIT CORPORATION ACT § 8.42 (West Group 1986).

In this case, the Defendant Board of Trustees is unarguably the dominant party over the Plaintiff. As mentioned previously, the Board controls the administration's personnel and is generally tasked with the preservation, implementation and future viability of the College. Plaintiff and all faculty members must rely on the Board to exercise its authority in good faith and with due care, because the consequences of losing accreditation or reputation generally include financial and career repercussions for the faculty. Finally, whether the Board members failed to exercise due care and good faith is inherently a question of fact. The allegations contained within Plaintiff's Complaint are not mere recitations of the elements or conclusory statements; they are, however, allegations that, if proven, could lead a trier-of-fact to find that the Board did not execute its duties in good faith or with the care that an ordinarily prudent person would exercise.

*SUBJECT MATTER JURISDICTION*

Plaintiff does not dispute that the NLRB is the "tribunal of 'exclusive primary competence' for deciding representational labor issues." ECF No. 8-1, p. 7 (quoting *DHSC, LLC*

*v. Nurses Ass'n/national Nurses Org. Comm., AFL-CIO*, 700 F. App'x 466, 470-71 (6th Cir. 2017)). However, Defendants seem to conveniently (and consistently) ignore the majority of Plaintiff's request for relief in the paragraph at issue.

> Further, your Plaintiff would respectfully order [sic.] that the College and the Board enter into good faith negotiations to either: 1) recognize the Faculty Organization as an appropriate collective-bargaining unit; or 2) agree to abide by the terms of the Handbook and include the faculty in the shared governance model utilized prior to Dr. Miller's appointment.

ECF No. 1-2, ¶ 30. Defendants' Motion fails to mention that the request is for an order to *enter into good faith negotiations*, and that the acceptable results of those negotiations *included* recognition as a bargaining unit *or* an agreement to return to the shared governance model recognized by the court of exclusive and primary competence in such matters. Plaintiff did not ask that this Court simply issue an order recognizing Plaintiff as a bargaining unit; Plaintiff requested that retaliatory actions be enjoined and that the Defendants engage in good faith negotiations to resolve the present conflict.

Interestingly, Defendants acknowledged in a footnote that District Courts have statutory authority to resolve controversies directly related to issues previously litigated by the NLRB, including contract disputes. ECF 8-1, p.8 n. 4. Naturally, Defendants dismissed the applicability of such carve-outs from the NLRB's exclusive jurisdiction, having made the determination that this matter is primarily representational. That determination does not comport with the gravamen of the Complaint. What should be clear from the face of the Complaint is that the Plaintiff had been satisfied with the ruling of the NLRB case in 2004 and had settled into an agreement with the Defendant College, until the then-new administration breached that agreement. Plaintiff is not seeking to re-litigate the NLRB case; however, it was abundantly clear that the Defendants

were breaching the Faculty Handbook and relying on the NLRB's denial of recognition, while ignoring the NLRB's finding of shared governance. Plaintiff's request for relief was for Defendants to choose a relationship and honor it.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

/s/ Jonathan T. Mosley_____
Handel R. Durham, Jr., TN BPR No. 010949
Jonathan T. Mosley, TN BPR No. 031526
*Attorneys for the Plaintiff*
22 North Front Street, Suite 760
Memphis, Tennessee 38103
Telephone:  (901) 543-0866

### CERTIFICATE OF SERVICE

I, Jonathan T. Mosley, hereby certify that a copy of the foregoing document is sent via the Court's CM/ECF system, which will send an electronic notification of such filing to counsel of record:

Rodney G. Moore
Yasmin A. Mohammad
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Rodney.moore@ogletreedeakins.com
Yasmin.mohammad@ogletree.com
*Attorneys for Defendants*

On this, the \_\_\_\_\_ day of September, 2019.

/s/ Jonathan T. Mosley_____
Jonathan T. Mosley